# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )   CASE NO.  CR-15-105HE |
| GREGORY DEWAYNE JOHNSON, | ) |
| a/k/a Gregory Dewayne Phillips, | ) |
| Defendant. | ) |

# DEFENDANT GREGORY JOHNSON'S SENTENCING MEMORANDUM & MOTION FOR VARIANCE

Respectfully submitted,

___*s/ Robert L. Wyatt, IV*___
Robert L. Wyatt, IV, OBA No. 13154
WYATT LAW OFFICE
501 N. Walker Avenue, Suite 110
Oklahoma City, OK 73101
(405) 234-5500 Telephone
E-mail: bobwyatt@wyattlaw.com

**September 13, 2016**

# TABLE OF CONTENTS

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Legal Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. The advisory guideline range of 51 to 63 months
    is greater than necessary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The history and characteristics of Mr. Johnson
    merit a below-guideline sentence . . . . . . . . . . . . . . . . . . . . . . . . . 7

1.    The advisory guideline range ignores the purpose
    and intent behind "not greater than necessary". . . . . . . . . . . . . 7

2.    Mr. Johnson's criminal history over-represents
    the seriousness of past criminal conduct and overstates
    his propensity to commit crimes . . . . . . . . . . . . . . . . . . . . . . . 8

3.    Mr. Johnson's unblemished record for the decade
    leading to this arrest warrants a below-guideline sentence . . . . . 9

4.    Mr. Johnson is motivated, has the requisite
    support, and has accepted responsibility . . . . . . . . . . . . . . . . . 9

5.    Disharmony of punishment for the criminal acts
    of others involved necessitates a below advisory
    guideline sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6.    Mr. Johnson cooperated with the investigation,
    but not in order to prosecute others . . . . . . . . . . . . . . . . . . . . . 11

7.    Mr. Johnson's possession of the firearm was for
    a non-criminal motive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8.    Mr. Johnson's possession was merely fleeting possession . . . . . 13

9.    Length of time since his prior felony convictions . . . . . . . . . . . 14

10.    Mr. Johnson made a bad mistake and used bad judgment . . . . 15

11.    Mr. Johnson's disadvantaged background warrants
consideration of a sentence below the guidelines. . . . . . . . . . . .   15

12.    Society will benefit more from Mr. Johnson's support
of family than from his incarceration  . . . . . . . . . . . . . . . . . . . .   17

13.    Allowing Mr. Johnson the opportunity for drug
treatment  would benefit him more than incarceration  . . . . . . .   18

14.    Incarceration is not necessary to protect the public. . . . . . . . .   19

15.     Mr. Johnson is middle-aged and presents less risk of recidivism  20

16.    Incarceration can be harmful to public safety, and
make a non-violent offender anti-social and a greater
danger to society  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

17.    A below-guideline sentence will promote respect,
not derision, for the law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

18.    Mercy warrants a below-guideline sentence. . . . . . . . . . . . . . .   23

19.    The good in Mr. Johnson's life must mitigate the bad  . . . . . . . .   24

20.    One of the good things in Mr. Johnson's life is
his work history and educational background . . . . . . . . . . . . . .   25

21.    There are simply too many people in prison already  . . . . . . . . .   26

22.    Greg Johnson has been in U.S. Marshal custody
for more than six months . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

23.    The totality of the circumstances show a need
for probation or a term of zero months  . . . . . . . . . . . . . . . . . .   27

24.    Section 3553(a)(3) requires that the Court consider
sentences other than imprisonment . . . . . . . . . . . . . . . . . . . . . . .   29

IV. Conclusion & Prayer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

# TABLE OF AUTHORITIES

## CASES

*Farmer v. Brennan,*
511 U.S. 825 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Elliott v. United States,*
971 F.2d 620 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Gall v. United States,*
552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 29

*Kimbrough v. United States,*
522 U.S. 85 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Rita v. United States,*
551 U.S. 338 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Adelson,*
441 F. Supp. 2d 506 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . 24

*United States v. Anderson,*
2007 WL 1112666 (5th Cir. Apr. 12, 2007). . . . . . . . . . . . . . . . 14

*United States v. Baker,*
502 F.3d 465 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Booker,*
543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Floyd,*
945 F.2d 1096 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Fuson*, No. 05-3782,
2007 WL 41426, at *6 (6th Cir. Feb. 8, 2007) . . . . . . . . . . . .  9, 26

*United States v. Holt*,
486 F.3d 997 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*United States v. Husein*,
478 F.3d 318 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*United States v. Kathman*,
490 F.3d 520 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*United States v. Payton*,
754 F.3d 375 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*United States v. Rivera*,
192 F.3d 81 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*United States v. Smart*,
518 F.3d 800 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . .  11

*United States v. Truman*,
304 F.3d 586 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Washington*,
596 F.3d 777 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . .  13

*United States v. Williams*,
432 F.3d 621 (6th Cir.  2005) . . . . . . . . . . . . . . . . . . . . . . . . .  8, 13

## STATUTES

18 U.S.C. § 227(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

18 U.S.C. § 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

18 U.S.C. § 3553(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3553(a)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 3553(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 U.S.C. § 3553(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3621(e)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 29

## RULES

28 C.F.R. 550.55(2000)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 4A1.3(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 5H1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## OTHER AUTHORITY

Eric Holder Attorney General, United States Dept. of Justice,
Remarks at the Annual meeting of the American Bar
Association's House of Delegates (Aug. 12, 2013)  . . . . . . . . . . . 26

Frank O. Bowman, III, *The Failure of the Federal Sentencing
Guidelines: A Structural Analysis*, 100:
2 COLUM. L. REV. 114  (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Judicial Security and Independence: Hearing before the
Committee on the Judiciary*, 110th Cong. 25-26 (2007). . . . . . . . . 7, 23

Justice Anthony M. Kennedy, Supreme Court of the
United States, Speech at the American Bar Association
Annual Meeting (Aug. 9, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Mass Incarceration in the United States: At What Costs?:*
*Haring Before the Joint Economic Committee*, 110th Cong.
23 (2007) (statement of Pat Nolan, Vice President, Prison
Fellowship) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

New CASA Report Finds: 65% of All U.S. Inmates Meet
Medical Criteria For Substance Abuse Addiction, Only 11%
Receive Any Treatment, available at
http://www.centeronaddiction.org/newsroom/
press-releases/2010-behind-bars-II . . . . . . . . . . . . . . . . . . . . . . 18

Shirley R. Klein et al., Inmate Family Functioning, 46 Int'l J.
Offender Therapy & Comp. Criminology 95 (2002) . . . . . . . . . . . . . 10

United States Sentencing Commission, *Recidivism Among*
*Federal Offenders: A Comprehensive Overview* 23 (2016)
*vailable at* http://www.ussc.gov/sites/default/files/pdf/
research-and-publications/researchpublications-
/2016/recidivism_over-view.pdf . . . . . . . . . . . . . . . . . . . . . . . . 20

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,  )
                                  )
                Plaintiff,     )
v.                          )
                                  )  CASE NO.  CR-15-105HE
GREGORY DEWAYNE JOHNSON,)
a/k/a Gregory Dewayne Phillips, )
               Defendant.    )

## DEFENDANT GREGORY JOHNSON'S SENTENCING MEMORANDUM & MOTION FOR VARIANCE

### I. Introduction

Possession is nine tenths of the law—or so the old saying goes. In this case, possession only begins to tell the story. Two years ago, Gregory Johnson made a poor decision. Recently laid off, trying to help his girlfriend with rent, and unaware that it was against the law to do so, Mr. Johnson sold a rifle on the Facebook marketplace.

Mr. Johnson loves to work.[1] He enjoys the satisfaction he receives from waking up in the morning, doing what needs to be done to take care of his family, and relaxing at the end of a long day. Nothing symbolized that satisfaction quite like his F-150 pickup truck. Unfortunately, he was involved in an automobile

---

[1] Since 2004, Greg Johnson has been employed.  He has avoided contact with law enforcement since then, with the exception of this matter for which he stands charged.

1

accident around November of 2013 that left him unable to work in his warehouse job at Hobby Lobby for a period of months. During this time, he started to get behind on his truck payments.

By the spring of 2014, he was back to work, this time for Coca-Cola. He was doing his best to catch-up on his truck payments but was still having trouble staying above water. To help him out, his girlfriend, Rachel Ghezelayagh, lent him some money to get caught up. Mr. Johnson does his best, but like many Americans, he lives paycheck-to-paycheck. When Rachel gave him money for his truck, that put them in a bind for rent. That is when he turned to Leah Schornick, who did not have any money to lend Mr. Johnson but did offer them (Rachel and Greg) a gun to sell.

Hesitant, but needing the money for rent, Greg Johnson agreed to find a buyer for the gun. Many people in Mr. Johnson's situation would have sold the gun on the streets—potentially to someone who would use the gun for nefarious purposes. But he did not go to "the hood" to sell the gun. He did not attempt to sell it on the street corner to a drug-dealer or gang-banger.[2] He **and** Rachel

---

[2]  The PSR, at ¶ 67, reports that the defendant was a Rollin' 40s gang member, which 20 year ago was true.

listed it on what they believed was a legitimate and legal platform—the "Facebook Marketplace." At this point, Mr. Johnson still had not possessed the gun.

Once a buyer was found, Leah Schornick brought the gun to the apartments where Rachel and Greg lived. Leah arrived a few minutes before the buyer, Charles Havenar, arrived. When he arrived, Leah handed the gun (in the case) to Greg who walked it across the apartment complex to give it to the new owner. Less than an hour later he was arrested.

Everything regarding the transaction was above-board—except that Mr. Johnson has a felony conviction. By all accounts, the new owner is a law-abiding citizen who purchased the gun for lawful purposes. The gun was not stolen or used in furtherance of a separate crime. In fact, the authorities probably would not have discovered the sale if it had not been listed on a popular and public Internet marketplace.

Greg Johnson does not deny that he did any of these things—he technically possessed the gun. At that time, Mr. Johnson did not believe that what he was doing would be considered possession. In his mind, possession meant owning a gun or carrying a gun as if he

owned it. He did not realize—as someone not trained in the law—that simply carrying the gun from one owner to the next (transitory or fleeting possession) would be considered possession in a criminal sense. That is not to say that he did not suspect that it *might* be illegal, but it seemed like the only way out of a bad situation. There is a reason that online marketplaces like the one used here do not normally have illegal substances or items listed on them: people who know that possession of those items is illegal go to great lengths to hide their sale. Mr. Johnson now realizes that he should have gone with his gut instinct and stayed away from this transaction. But at the time, the desire to provide rent money for his family outweighed better judgment.

When initially confronted by police, Mr. Johnson immediately cooperated with the investigation. Without prompting, he asked if the police were there because of the gun sale. Rather than exercising his constitutional right to remain silent, he told the police exactly what happened, informing them that the sale had taken place just minutes before they arrived and that the $300 from the sale was in his pocket. It is clear that Mr. Johnson was under the impression that he had done nothing wrong.

Still, on March 9, 2016, Gregory Johnson pled guilty to a one-count Indictment charging felon in possession of a firearm in violation of 18 U.S.C. § 992(g)(1). The maximum penalty is up to ten years imprisonment and/or a fine of up to $250,000, a special assessment of $100, and a term of supervised release of not less than one year. Mr. Johnson is personally and intimately aware that his decision to sell the rifle was a bad choice—the worst in recent memory. He knows today that his choice was his own and that there must be consequences. We respectfully ask this Court to take these and other factors into consideration in determining the sentence appropriately fits this crime and this defendant.

## II. Legal Authority

District courts have discretion in determining sentences according to the provisions of 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, at 259-60 (2005). Section 3553(a) is an overarching requirement that the sentencing Court impose a sentence "sufficient, but not greater than necessary" to serve the objectives of sentencing. 18 U.S.C. § 3553(a) (2010); *Kimbrough v. United States*, 522 U.S. 85 (2007). A court can vary or depart from the sentencing guidelines because the guidelines are advisory only

and are only one factor among many factors that a court must consider when determining a sentence. *Kimbrough*, 522 U.S. at 90. Overall, **a within-guidelines sentence can in fact be "greater than necessary"** in a particular case, *id.* at 91 (emphasis added), and the sentencing court can "tailor the sentence in light of other statutory concerns . . . ." *Booker*, 543 U.S. at 245-46. Section 3553(a) outlines seven considerations in determining whether a sentence is sufficient, but not greater than necessary.

In determining an appropriate sentence, the court must first determine the guideline range as established by the Guideline Commission. The Presentence Report (PSR) calculates Mr. Johnson's offense level at 17 with a criminal history category of VI, making the advisory guideline range 51-63 months. This Court is allowed to depart or vary from the guidelines but must give reasons for doing so. 18 U.S.C. § 3553(c), *Rita v. United States*, 551 U.S. 338, 339 (2007). Respectfully, the Court should order Mr. Johnson to a sentence below the advisory guideline range in consideration of the following factors.

### III. The advisory guideline range of 51 to 63 months is greater than necessary.

### A.   The history and characteristics of Mr. Johnson merit a below-guideline sentence.

### 1. The advisory guideline range ignores the purpose and intent behind "not greater than necessary."

When testifying before a Senate judiciary committee hearing, Justice Kennedy made the following statement in response to a question about sentences under the sentencing guidelines, "[o]ur sentences are too long, our sentences are too severe, our sentences are too harsh . . . there is no compassion in the system, there is no mercy in the system." *Judicial Security and Independence: Hearing before the Committee on the Judiciary*, 110th Cong. 25-26 (2007) (statement of Justice Anthony Kennedy, Supreme Court of the United States). Incarcerating Mr. Johnson ignores the intent behind "not greater than necessary."

> At or near the root of virtually every serious criticism of the guidelines is the concern that they are too harsh, that federal law requires imposition of prison sentences too often and for terms that are too long . . . . By any standard, the severity and frequency of punishment imposed by the federal criminal process during the guidelines era is markedly greater than it had been before. Incarcerative sentences are imposed far more often than they were before the guidelines, and the length of imposed sentences has nearly tripled.

Frank O. Bowman, III, *The Failure of the Federal Sentencing Guidelines: A Structural Analysis*, 100:2 COLUM. L. REV. 114, 114 (2005).

### 2. Mr. Johnson's criminal history over-represents the seriousness of past criminal conduct and overstates his propensity to commit crimes.

The Sentencing Guidelines allow for a downward departure from the guideline range "[i]f reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). At least one court has been willing to consider the defendant's recent criminal history to depart from the guideline range. *United States v. Williams*, 432 F.3d 621 (6th Cir. 2005) (upholding a departure, in felon in possession case, to 24 months from 48 in part because the prior felony was old, no new crimes were committed in the interim, so criminal history overstated propensity to commit crimes). Until this event, Mr. Johnson maintained employment and kept a clean record since 2003, indicating that a criminal history category of VI grossly misrepresents his current propensity to commit crimes.

### 3. Mr. Johnson's unblemished record for the decade leading to this arrest warrants a below-guideline sentence.

That Mr. Johnson's criminal history is misrepresented also supports a below-guideline sentence based on the unblemished record he has had since his last arrest in 2003. Mr. Johnson was not only staying out of trouble, but he was working and providing for his family. A departure based on several years of maintaining a clean record is both logical and reasonable. *See United States v. Fuson*, No. 05-3782, 2007 WL 41426, at *6 (6th Cir. Feb. 8, 2007) (finding downward variance reasonable in felon in possession case, in part because of the defendant's five-year unblemished record). Mr. Johnson technically broke the law with his brief possession of the rifle, but his clean record leading up to the offense should also be considered in his sentencing.

### 4. Mr. Johnson is motivated, has the requisite support, and has accepted responsibility.

Mr. Johnson is a motivated offender. He spent time in prison and appreciates more than most the freedoms and liberties that are at stake. But for a misunderstanding regarding the law, Mr. Johnson would not be here today. He has a positive and caring

support network at home, where he resides with his long-time girlfriend and her son. "The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures." Shirley R. Klein et al., *Inmate Family Functioning*, 46 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 95, 99-100 (2002).

While he made a foolish and illegal decision when he committed his actions, Mr. Johnson has accepted responsibility.

### 5. Disharmony of punishment for the criminal acts of others involved necessitates a below advisory guideline sentence.

Mr. Johnson was not the only person with possession of the firearm and a criminal record. Rachel Ghezelayagh is also a convicted felon who jointly possessed the firearm as well (either actually or constructively). Still, Rachel was not charged or indicted, even though her role in the offense was just as serious. In fact, it was to provide her rent money that Mr. Johnson set out to sell the firearm in the first place. But it is Mr. Johnson who has spent the last six months in jail. It is Mr. Johnson who will have another conviction on his record. And it is Mr. Johnson who has taken all the responsibility for the crime. Any term not under the guideline

range would be an unjust punishment in light of the fact other criminal actors will likely suffer no consequences. *See e.g., United States v. Smart*, 518 F.3d 800 (10th Cir. 2008) (upholding downward departure where defendant was convicted at trial of inducing a minor to engage in sexually explicit conduct for the purpose of producing videotapes in violation of 18 U.S.C. § 2251(a) with guidelines of 168 to 210 months, but sentenced to 120 months because defendant was less culpable than co-defendant who received 120 months, even though co-defendant pled guilty).

### 6. Mr. Johnson cooperated with the investigation, but not in order to prosecute others.

As previously mentioned, Mr. Johnson has cooperated with the authorities. He told the police what happened when they arrived. He voluntarily offered up information in the back of the squad car. Mr. Johnson's cooperation was not motivated by a desire to pin someone else for the crime or have someone prosecuted in his place. Despite the fact that Rachel was never charged, Mr. Johnson never tried to pin the crime on her, despite the fact that her Facebook page was used to post the gun, but the Court can still

grant him a departure. *United States v. Truman*, 304 F.3d 586, 592-93 (6th Cir. 2002).

### 7. Mr. Johnson's possession of the firearm was for a non-criminal motive.

Though Mr. Johnson does not contest the fact that he possessed the gun, his possession was benign. Down on his luck and trying to stay afloat, Mr. Johnson agreed to sell the gun in order to provide rent money for his family. Mr. Johnson did not sell the gun on the streets or to gang members, despite the fact that the PSR points out that he has prior gang affiliations.[3] His possession was not for the purpose of holding up a convenient store or robbing a bank. It was not even for personal protection. He and his girlfriend listed the gun on a popular online marketplace—which ironically happens to be the reason he was caught. The fact is, if Mr. Johnson had sold the gun to someone on the street, he probably would not be in the situation in which he finds himself. It is precisely because he chose to try and sell the gun in what could be perceived as a legitimate sale that he got caught. Had he chosen to sell the gun to an individual on the street, he may have alluded

---

[3] This is not to say that Mr. Johnson is still affiliated with a gang. As addressed in the objections to the PSR, Mr. Johnson has not been affiliated with a street gang in over 20 years.

law enforcement, and the gun could have been used to commit a crime.

Instead, the gun was sold to a law-abiding citizen who wanted the gun for lawful purposes. Mr. Johnson does not claim that this excuses what he did but asks the Court to consider these important facts when determining his sentence. *See United States v. Williams*, 432 F.3d 621 (6th Cir.  2005) (departing to 24 months from 48 months, in felon in possession case, in part because defendant possessed firearm for self-defense in light of threats he had received).

### 8. Mr. Johnson's possession was merely fleeting possession.

Though the Tenth Circuit has never adopted the defense of fleeting possession *United States v. Washington*, 596 F.3d 777, 782 (10th Cir. 2010), the Court is still free to consider fleeting possession as a factor in sentencing. 18 U.S.C. § 3553(a)(1). Here, even though Mr. Johnson would not be able to raise fleeting or transitory possession as an absolute defense, it can be used as a circumstance of the offense under § 3553(a)(1). Mr. Johnson did not have extended possession of the gun. He did not "carry" the gun like someone who "carries" a pistol. He did not shoot the gun. He did

not even touch the actual gun itself—only the case. Because Mr. Johnson's possession was fleeting at best, a below-guideline sentence should be considered.

### 9. Length of time since his prior felony convictions.

It is important to remember that the only crime that Mr. Johnson is charged with is possessing a firearm—something that many Americans do on a daily basis. The felonies in question took place at a very different time in Mr. Johnson's life. In his youth, Mr. Johnson was not a very productive member of society, and his criminal history (category VI) reflects that. Recently (for more than 10 years), Mr. Johnson has been a working, productive member of society. In *United States v. Anderson*, No. 06-40732, 2007 WL 1112666 (5th Cir. Apr. 12, 2007), the Fifth Circuit, dealing with a felon in possession case, upheld the trial court's lenient sentence, in part because the defendant had reintegrated into society "and showed no signs of repeating his long since past criminal behavior." This case presents similar facts; a defendant who no longer lives the life of crime that he did in his youth. Mr. Johnson should be considered for a below-guideline sentence.

### 10.   Mr. Johnson made a bad mistake and used bad judgment.

The reason Mr. Johnson finds himself in his current situation is because he made a mistake. It was a serious mistake—a bad mistake. This mistake resulted in the commission of a crime. Mr. Johnson recognizes that using poor judgment is not an excuse and does not lower his level of culpability. He merely asks that the Court take note of the circumstances surrounding the offense. *See United States v. Kathman*, 490 F.3d 520, 526 (6th Cir. 2007) (upholding downward departure, in part because the defendant made a mistake and used poor judgment on the night in question). If Mr. Johnson could re-think his decision and choose another path, he would do so. He was only doing what he felt was best for his family at the time; something that should not cost him a significant amount of his liberty at taxpayer's expense.

### 11.   Mr. Johnson's disadvantaged background warrants consideration of a sentence below the guidelines.

Mr. Johnson was raised without a father-figure in his life. His father was in and out of his life due to drug addiction and time served in prison. Mr. Johnson's last name is actually Phillips, but he did not know that Phillips was the name on his birth certificate

until he was an adult. At one point in his childhood, his mother married his stepfather. Mr. Johnson's stepfather was a violent man, and when Mr. Johnson was 12-years-old, his stepfather shot his mother multiple times. She lost a lung but survived the shooting. After his stepfather shot his mother, he turned the gun to Mr. Johnson, but the gun did not fire. At that point, he hit Mr. Johnson with the butt of the gun. This lack of parental direction should be considered in sentencing, especially in light of Mr. Johnson's criminal history category based mostly on his troubled youth (*see* PSR ¶¶ 33-58). *United States v. Floyd*, 945 F.2d 1096, 1100 (9th Cir. 1991) (rev'd on other grounds) (holding that youthful lack of guidance is an appropriate mitigating circumstance consistent with § 3553).

Without a stable home, Mr. Johnson did what many young men in the inner-city do. He turned to drug use and gangs. He tried marijuana for the first time when he was 13-years-old. He attended John Marshall High School but only completed the ninth grade. The circumstances of Mr. Johnson's childhood are traumatic and are grounds for a downward departure. *United States v. Rivera*, 192 F.3d 81, 85 (2nd Cir. 1999) (holding that "district courts may

properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense").

### 12. **Society will benefit more from Mr. Johnson's support of family than from his incarceration**.

Despite the tough upbringing that Mr. Johnson endured, he now has family obligations that are likely to fall to the state if he is incarcerated. In 2007, the Sixth Circuit Court of Appeals upheld a downward departure based on family circumstances, where the district court noted that the defendant was "irreplaceable to her family." *United States v. Husein*, 478 F.3d 318, 324 (6th Cir. 2007).

In this case, Greg Johnson is in a common-law relationship with Rachel Ghezelayagh. She suffers from severe Rheumatoid Arthritis,[4] with which Mr. Johnson has helped her cope. Before his mother-in-law died, he was active in her life—helping her into and out of bed and with the restroom. Greg Johnson is a father-figure to Rachel's  son.  He provides for Rachel and their combined family. Since Greg was arrested, she has been evicted from their apartment. Certainly society is better off with Greg Johnson

---

[4] So much so that law enforcement would not take her into custody, according to police reports.

working and providing for the family who needs him rather than sending him to prison.

### 13.   Allowing Mr. Johnson the opportunity for drug treatment  would benefit him more than incarceration.

Mr. Johnson admitted to the probation office that he has a history of scattered drug use. He has never received any treatment for drug abuse but admitted that he believes he would benefit from treatment. *PSR ¶ 76.* Section 3553(a)(2)(D) permits the Court to provide the defendant with necessary medical care. If Mr. Johnson is able to get treatment, he and the public would benefit much more than if he is sentenced to prison. A recent study shows that approximately 65% of inmates struggle with substance abuse addiction, and only 11% get the treatment needed.[5] Sending Mr. Johnson to prison would not serve society's interest in seeing him be completely clean.

Because a firearm was involved, even though simply felon in possession, it is unlikely that he would be eligible for Residential Drug Abuse Treatment Program (RDAP). Even if he was eligible to

---

[5] New CASA Report Finds: 65% of All U.S. Inmates Meet Medical Criteria For Substance Abuse Addiction, Only 11% Receive Any Treatment, available at http://www.centeronaddiction.org/newsroom/press-releases/2010-behind-bars-II.

participate in RDAP for treatment purposes, he is **not eligible** for early release for successful completion of RDAP. *See* 18 U.S.C. §§ 227(d) and 3621(e)(5)(B);  28 C.F.R. 550.55 (2000).

### 14.   Incarceration is not necessary to protect the public.

Though one aim of imprisonment is to protect the public, that is not necessary in this case. And when incarceration is not necessary to protect the public, a below-guideline sentence is appropriate. *United States v. Baker*, 502 F.3d 465, 468 (6th Cir. 2007). The crime in question is a victimless crime.  (No one was injured. The gun was not sold for future illegal use).  Mr. Johnson does not claim that what he did was not a crime—only that incarceration is not necessary to protect the public. He is not accused of a violent offense and should not be treated like a violent offender. One of the factors that the Court must consider is the need to protect the public from the defendant. 18 U.S.C. § 3553(a)(2)(C). In this case, the need is very low, if it a need exists at all. Mr. Johnson has shown that he is not a violent man and asks that his sentence reflect that.

### 15.   Mr. Johnson is middle-aged and presents less risk of recidivism.

The Sentencing Guidelines recognize that age may be an appropriate factor to determine whether a lesser sentence may be necessary. U.S.S.G. § 5H1.1. This consideration is also reinforced by caselaw. *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (upholding a downward departure based solely on the defendant's age); *United States v. Payton*, 754 F.3d 375, 378-9 (6th Cir. 2014) (vacating sentence, noting that the district court failed to consider age in determining whether the sentence was reasonable). The Sentencing Commission has also published some research showing that recidivism rates decrease with the age of the defendant. United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview* 23 (2016) *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications-/2016/recidivism_over-view.pdf. The statistics show that recidivism drops from 71.1% when the defendant is under 21 at the time of sentencing to 35.9% when the defendant is 41-50 years old when he is sentenced. *Id.*

At 40-years-old, Greg Johnson is not likely to recidivate. He is done with the crimes of his youth. He simply wants to move on with his life by taking care of Rachel and working to provide for their family. Even the crime that he is being sentenced for was not insidious or violent. He briefly possessed a gun for the purpose of getting rent money.

## 16.   Incarceration can be harmful to public safety, and make a non-violent offender anti-social and a greater danger to society.

"Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858 (1994). Greg Johnson is not violent, and neither he nor his history or crime warrant lengthy incarceration.

> [M]ost inmates do not leave prisons transformed into law-abiding citizens.   In fact, the very skills they learn inside to survive make them anti-social when they come home . . . . [c]ertainly we need prisons to separate the dangerous offenders from our society . . . . [p]risons are for people we are afraid of. Yet our sentencing laws have filled them with people we are just mad at.  Changing our sentences so that low-risk offenders are punished in the community under strict supervision would reduce overcrowding in prisons and help control the violence. It would hold low-risk offenders accountable without exposing them to violence and the great difficulties of transitioning back to employment in the community after their sentence.

*Mass Incarceration in the United States: At What Costs?: Hearing Before the Joint Economic Committee*, 110th Cong. 23 (2007) (statement of Pat Nolan, Vice President, Prison Fellowship).

It is unique that Mr. Johnson came out of prison still a young man and became a more productive member of society. He has been able to stay away from negative influences that might entice him to fall back into bad habits. Prison, on the other hand, would put him into contact with the same people he has been trying to avoid for the last decade. Confinement may lead to a stronger likelihood of re-offending if Mr. Johnson spends too much time with other criminals.

### 17.  A below-guideline sentence will promote respect, not derision, for the law.

Since his arrest on these charges, Mr. Johnson has shown compliance with authority and respect for the law. "[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007) (finding that defendant who distributed ecstasy

with others, profiting $30,000 and was sentenced to probation was reasonable where defendant, prior to plea, stopped using illegal drugs, finished college, maintained employment, and had no significant criminal history).

At the time of sentencing, Greg Johnson will have spent a combined total of more than six months in federal custody (Logan County).  A guideline term of imprisonment will not promote respect for the law in this case but could promote derision for the law because the recommended Guideline penalty of incarceration is too severe considering Mr. Johnson's characteristics and the nature and circumstances of his crime.

### 18.   Mercy warrants a below-guideline sentence.

"There is no mercy in the system."   Judicial Security and Independence: Hearing before the Committee on the Judiciary, 110th Cong. 25-26 (2007) (statement of Justice Anthony Kennedy, Supreme Court of the United States).  However, "[a] country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy.  The greatest of poets reminds us that mercy is 'mightiest in the mightiest.  It becomes the throned monarch better than his crown.'"   Justice Anthony M. Kennedy,

Supreme Court of the United States, Speech at the American Bar Association Annual Meeting (Aug. 9, 2003).

Greg Johnson is worthy of mercy. Through mercy, Mr. Johnson can be punished but not more than necessary in accordance with 18 U.S.C. § 3553(a). Through mercy, Mr. Johnson can continue to be a positive component of his family and the community. Through mercy, Mr. Johnson can continue to improve his life, his education, and his future.

### 19.   The good in Mr. Johnson's life must mitigate the bad.

Gregory Johnson's recent history (past 10 years) reflects a good person who technically broke the law here.  Since the early part of the century, Mr. Johnson has generally lived a good life, attaining his GED, working a job, helping Rachel with her Rheumatoid Arthritis and caring for her mother in her last illness. As a young man, Mr. Johnson made many costly mistakes—but he has done an exemplary job of making up for that as an adult. The "good" in his life should be recognized and at least to some degree should off-set his misconduct.  *See United States v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006) (imposing 42-month sentence where guidelines call for life sentence in part because of the defendant's

past integrity and good deeds, stating **"[b]ut, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.** This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'") (emphasis added).

**20. One of the good things in Mr. Johnson's life is his work history and educational background.**

Mr. Johnson has been steadily employed since he was last released from jail (with exception a the period just before his arrest while recovering from a car accident). Even though he has not always held jobs for extended periods of time, he was determined to take care of his family without resorting to the life of crime he knew as a young man. One of the most telling indicators of recidivism is employability. It can be difficult for convicted felons to find steady work. Mr. Johnson has shown that not only has he gotten a good

job with his arrest record but that he is also very employable (and loves to work).

Part of the reason Mr. Johnson is employable is because he has attained his GED and received training in various fields including; fire safety, boom lift and forklift operation, and electrical work. He has also expressed interest in receiving more electrical training or training in diesel auto repair. Incarceration does not serve any of these ends which merely adds another barrier to Greg Johnson improving his life. *See Fuson* , 2007 WL 41426, at *6.

## 21. There are simply too many people in prison already.

In 2013, then Attorney General Eric Holder gave a speech at the Annual Meeting of the American Bar Association where he had this to say about sentencing in America:

> As a nation, we are coldly efficient in our incarceration efforts. While the entire U.S. population has increased by about a third since 1980, the federal prison population has grown at an astonishing rate – by almost 800%. It's still growing – despite the fact that federal prisons are operating at nearly 40% above capacity. Even though this country comprises just 5% of the world's population, we incarcerate almost a quarter of the world's prisoners.

Eric Holder Attorney General, United States Dept. of Justice, Remarks at the Annual meeting of the American Bar Association's

House of Delegates (Aug. 12, 2013) (transcript available at https://www.justice.gov/opa/speech/attorney-general-eric-holder-delivers-remarks-annual-meeting-american-bar-associations).    Mr. Holder also noted that many inmates are rearrested "at great cost to American taxpayers and often for technical or minor violations." *Id.*

As the table in Attachment 1 shows, incarceration rates have increased at an exponential rate since the Sentencing Reform Act was passed. Recognizing that prison sentences will continue to play a role in deterring and punishing crime, Mr. Johnson only asks that he not be sent to prison for a technical violation of the law.

## 22. Greg Johnson has been in U.S. Marshal custody for more than six months.

Mr. Johnson was held in detention for five days after his initial arrest.   He has also served approximately six months in U.S. Marshall custody.   These days should be counted toward his sentence as time served.

## 23. The totality of the circumstances show a need for probation or a term of zero months.

Due to the lack of criminal intent behind the crime, the decision not to sell the gun to street thugs, the motivation behind the crime (to get rent money), the improvements Mr. Johnson has

shown over his lifetime, the overrepresentation of his criminal history, the background he overcame, the lack of threat Mr. Johnson is to the community, and the numerous other factors outlined above, the totality of the circumstances here calls for probation or a term under the guideline range. Though some of these factors standing on their own may only merit a small degree of leniency, they combine to show how much a lenient sentence is needed.

The Tenth Circuit in *Elliott v. United States,* 971 F.2d 620, 621 (10th Cir. 1992), held that a zero month sentence differs from a sentence of probation.  Respectfully, a zero month sentence may be appropriate here.  However, Mr. Johnson has already served more than 6 months; thus, the Court could sentence him to 6 months with credit for time served and order a substantial term of supervised release rather than merely probation and still release him.  This would satisfy the "punishment" aspect of sentencing and still deter Mr. Johnson and others from further criminal activity.

## 24. Section 3553(a)(3) requires that the Court consider sentences other than imprisonment.

As previously mentioned, the Court is required to consider the factors from 3553(a), which includes the kinds of sentences available. 18 U.S.C. § 3553(a)(3); *Gall v. United States*, 522 U.S. 38, 59 (2007). Because there is no minimum sentence for a violation of 18 U.S.C. § 922(g), probation is available as a possible sentence. Recognizing that custodial sentences are more severe, the *Gall* Court went on to describe the liberties lost during probation:

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual "special conditions" imposed by the court.

522 U.S. at 48 (citations omitted). Probation would allow Mr. Johnson to pay for the crime that he committed without ruining his family's life for the next several years. He would be able to work and provide for his family, all while repaying his debt to society. Considering he poses no danger to the community, little threat to

recidivate, and shows remorse for his actions, probation should be considered for an appropriate sentence.

## IV. Conclusion & Prayer

Gregory Johnson recognizes the seriousness of the offense for which he has pled guilty. This motion presents authority for the Court to exercise sentencing discretion within the statutory considerations of § 3553(a). A sentence below the guideline range is the only way to ensure that the statutory considerations are upheld.

WHEREFORE, Mr. Johnson prays that the Court consider all these factors and any others presented at the sentencing hearing and impose a sentence below the guideline range.  In these unique circumstances, a six (6) months sentence with credit for time served would be sufficient to meet all of the goals of sentencing.

If incarceration is required by the Court, Mr. Johnson requests a recommendation for the Federal Prison Camp in El Reno, Oklahoma, as it is nearest his home.

Respectfully submitted,

   _s/ Robert L. Wyatt, IV_
Robert L. Wyatt, IV, OBA No. 13154

WYATT LAW OFFICE
501 N. Walker Avenue, Suite 110
Oklahoma City, OK 73101
(405) 234-5500 Telephone
E-mail: bobwyatt@wyattlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2016, a true and correct copy of the foregoing Motion was sent via this court's electronic court filing system to:

Arvo Q Mikkanen, Asst. U.S. Attorney,  Arvo.Mikkanen@usdoj.gov;

William Earley, Office of the Federal Public Defender (former counsel to Mr. Johnson),  william.earley@fd.org.

*    s/ Robert L. Wyatt, IV*
Robert L. Wyatt, IV

31